FIFTH DIVISION
April 20, 2007

No. 1-04-3633

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| $280,020 UNITED STATES CURRENCY, | ) | Honorable |
| | ) | William J. Haddad, |
| Defendant | ) | Judge Presiding. |
| | ) | |
| (Shayne Kolody and Stephen M. Komie, | ) | |
| Claimants-Appellees). | ) | |

JUSTICE GALLAGHER delivered the opinion of the court:

This appeal arises from the dismissal of the State's amended complaint for forfeiture of $280,020 in United States currency carried by claimant Shayne Kolody and seized by police when Kolody boarded an Amtrak train at Union Station in Chicago. Because we determine that the trial court erred when it dismissed the amended complaint upon a motion for reconsideration, we reverse and remand for further proceedings.

FACTS

On April 26, 2001, the State began civil forfeiture proceedings by filing a complaint under the Drug Asset Forfeiture Procedure Act (the Forfeiture Act or the Act) (725 ILCS 150/1 *et seq*. (West 2000)). An amended complaint was later filed, alleging that on January 23, 2001, officers from the Chicago Police Department Narcotics Transportation Team were informed that Kolody would be traveling on an Amtrak train from Chicago to Seattle, Washington. The officers learned that Kolody was traveling on a one-way ticket for which he paid cash within 24 hours of the train's departure.

Officers intercepted Kolody, a Canadian citizen, when he identified himself to a train attendant while boarding. According to the amended complaint, after Kolody responded inconsistently to the officers' questions about his travel to Chicago and his activities here, Kolody consented to a search of himself and his luggage, which contained a total of $280,020 in 17 bundles of cellophane-wrapped United States currency in $10, $20, $50 and $100 denominations. A dog trained in narcotics detection indicated the presence of narcotics odor on the currency. No drugs were found.

The amended complaint alleged that the currency in Kolody's baggage was "used or intended to be used to facilitate the sale and/or possession of a controlled substance and/or cannabis, or were proceeds from the sale or distribution of controlled substances and/or cannabis." The complaint described Kolody's previous encounters with United States and Canadian customs agents in 2000 and alleged that Kolody lives in Surrey, British Columbia, which is a "major source area for cannabis."

1-04-3633

PROCEDURAL HISTORY

Kolody and his attorney, Stephen M. Komie of Chicago (hereinafter referred to as the claimants), moved to dismiss the State's initial complaint under section 2-615 and section 2-619 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2-615, 2-619 (West 2000)).  The claimants argued that the complaint failed to allege sufficient facts demonstrating a nexus between the money recovered from Kolody's bags and illegal drug activity.  The claimants further contended that even assuming the facts of the complaint were true, no allegations were offered as to the source of the money that was seized, which they argued was an affirmative matter defeating the State's claim.  In addition, the claimants alleged that the complaint should be dismissed because the State lacked probable cause to seize the property at the time of the search. The claimants also moved to strike immaterial matter from the complaint.

After striking portions of the complaint that described general characteristics of drug trafficking, Judge Paul Karkula, in a written order, granted the claimants' motion to dismiss the complaint, concluding that the complaint did not establish a nexus between the money recovered from Kolody's bags and a wrongful act.  Judge Karkula allowed the State to amend its complaint.

Judge James Murray heard the parties' arguments on the State's amended complaint.  In a 16-page memorandum opinion, Judge Murray concluded that the amended complaint stated a cause of action for forfeiture of the currency because it established "a reasonable nexus between the currency and illegal drug activity."  The judge concluded that the State was not required to show that probable cause for the forfeiture of the property existed when the complaint was filed. Judge Murray held that the probable cause determination "is to be made at trial as long as the

[c]omplaint for [f]orfeiture presents some factual support between the currency and drug activity." On that basis, Judge Murray denied the claimants' motion to dismiss the amended complaint. The judge further determined that the claimants had not raised an affirmative matter that would defeat the State's assertions and thus denied the claimants' motion to dismiss the amended complaint under section 2-619 of the Code.

After deciding the motions to dismiss the amended complaint, Judge Murray then denied the claimants' motion to strike portions of the complaint. The claimants filed a motion to reconsider Judge Murray's rulings on the motions to dismiss and the motion to strike. The claimants argued that the amended complaint did not allege a nexus between the currency and illegal drug activity and that Judge Murray "repeatedly ignored established forfeiture law."

Judge William Haddad heard the claimants' motions to reconsider because Judge Murray was no longer serving on the bench at that time. In a written order, Judge Haddad vacated Judge Murray's orders and granted the claimants' motion to dismiss the State's amended complaint pursuant to section 2-615 of the Code. While noting Judge Murray's determination that the amended complaint sufficiently alleged a connection between the money and illegal activity, Judge Haddad concluded that both the original and the amended complaint "merely allege suspicions of law enforcement officers that resemble a narration of a 'drug carrier profile,' rather than the narration of a complaint for probable cause" under the Forfeiture Act.

Judge Haddad's order continued:

"The complaints fail to allege a legal *nexus* between the defendant *res* and criminal activity that gives rise to forfeiture under the Constitutions of the United

4

States and the State of Illinois or the statutory scheme and relevant case law which authorize forfeiture. Complaints in forfeiture ought to identify through some means the 'misconduct giving rise to the forfeiture' (725 ILCS 150/6) through some notion of who, what, where, how and/or when the misconduct occurred – or even the alleged identification of the drug or drugs – or perhaps the actual role of the money, or what portion of it, was used in connection with the misconduct.

Particularly, the First Amended Complaint plainly fails to state a cause of action based on a *nexus* with the defendant *res*, the United States Currency, and a criminal use of the defendant *res* in the furtherance of an illegal drug activity." (Emphasis in original.)

The judge further noted in the order that "after three years," the State was unable to allege "any added facts or allegations that would connect the defendant *res* to criminal activity."

Judge Haddad granted the motion to dismiss the amended complaint with prejudice. In addition, the order stated that the court "grants judgment on the pleadings in favor of claimants and against plaintiff pursuant to 735 ILCS 2-615(e)." The State now appeals those orders.


ANALYSIS

On appeal, the State's overriding contention is that its amended complaint sufficiently alleged reasonable grounds to believe that a nexus existed between illegal drug activity and the $280,020 found in Kolody's possession. The State argues that Judge Murray correctly applied the forfeiture law in denying the claimants' motions to dismiss the complaint and that Judge

1-04-3633

Haddad misinterpreted the law in granting the claimants' motion to reconsider. Before reaching the merits of the State's position, however, we address the claimants' argument that this appeal should be dismissed for lack of jurisdiction.

I. Jurisdiction

The claimants assert that this court lacks subject matter jurisdiction because the State's notice of appeal was incomplete. They argue that this appeal is moot because the State did not specify that it sought review of the portion of Judge Haddad's order that granted judgment on the pleadings to the claimants.

The claimants rely on Supreme Court Rule 303(b)(2) (155 Ill. 2d R. 303(b)(2)), which requires a notice of appeal to "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." A notice of appeal vests this court with the power to decide the matters which are properly presented therein. *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 688, 637 N.E.2d 1085, 1091 (1994). The notice of appeal serves the alternate purpose of informing the party that prevailed in the circuit court of the portion of the judgment that is, potentially, to be reviewed. *Schmidt v. Joseph*, 315 Ill. App. 3d 77, 80, 733 N.E.2d 694, 697 (2000). "To that end, notice is to be liberally construed when determining what matters were properly raised in the notice, and a defect will be deemed one of form, so long as that construction does not prejudice the appellee." *Schmidt*, 315 Ill. App. 3d at 80, 733 N.E.2d at 697.

As the State points out, Judge Haddad issued two inconsistent or, at the least, duplicative

6

rulings. Judge Haddad granted the motion to reconsider the motions to strike and dismiss the State's complaint and vacated Judge Murray's opinion. Judge Haddad then dismissed the complaint but granted judgment on the pleadings in favor of claimants under section 2-615(e) of the Code, which provides: "Any party may seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2000).

In its notice of appeal, the State indicated that it was appealing Judge Haddad's granting of the claimants' motion to reconsider, as well as the court's orders granting the motion to dismiss the amended complaint and the motion to strike immaterial matter from the complaint. "[T]he notice of appeal may be construed to bring up for review an earlier unspecified order where that order is a step in the procedural progression to the specified order." *Schmidt*, 315 Ill. App. 3d at 80, 733 N.E.2d at 697; see also *Heller Financial*, 264 Ill. App. 3d at 688, 637 N.E.2d at 1091 (finding that a notice of appeal from a denial of a motion to reconsider is sufficient to vest appellate court with jurisdiction to review underlying order of ultimate judgment).

Moreover, the notice of appeal sufficiently stated the issues that the State intended to raise to this court, including the ruling under section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2000)). The claimants do not argue that the wording of the notice prejudiced or disadvantaged them in the defense of the judgment. The notice of appeal indicated that the State challenged the order dismissing its amended complaint. Therefore, the notice of appeal adequately set out the issues raised, and this court is not deprived of jurisdiction on that point.

1-04-3633

II. Review of the Trial Court's Granting of the Claimant's Motion to Reconsider

A. The Standard of Review

We now turn to the merits of the State's arguments on appeal. The State contends that Judge Haddad erred in granting the claimants' motion to reconsider and dismissing the State's amended complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2000)). It argues that considering the contents of the complaint in the light most favorable to it, the complaint alleged reasonable grounds to believe that a nexus existed between the currency recovered from Kolody's luggage and illegal drug activity.

The parties discuss two standards of review: (1) this court's review of Judge Haddad's ruling on the motion to reconsider; and (2) Judge Haddad's review of Judge Murray's decision on the motion to dismiss the State's amended complaint. The claimants argue that Judge Haddad could review Judge Murray's order *de novo* because it involved a question of law, *i.e.*, whether the amended complaint stated a cause of action, and because Judge Murray did not make a factual determination to which Judge Haddad was required to defer.[1]

We first must establish the standard of our review of Judge Haddad's ruling on the motion to reconsider because it governs this court's review of the order being appealed. The purpose of a motion to reconsider is to bring to the court's attention a change in the law, an error in the court's previous application of existing law, or newly discovered evidence that was not

---

[1] Although a motion to reconsider is generally heard by the judge that issued the ruling under reconsideration, that was not possible here because Judge Murray was no longer serving on the bench at the time.

available at the time of the hearing. *In re Gustavo H.*, 362 Ill. App. 3d 802, 814, 841 N.E.2d 50, 60 (2005). In the claimants' motion to reconsider, they asserted that Judge Murray "ignored" and "misconstrued" established forfeiture law.

The parties both state that this court may disturb the granting of such a motion upon a finding that the trial court abused its discretion. See *Avenaim v. Lubecke*, 347 Ill. App. 3d 855, 861, 807 N.E.2d 1068, 1073 (2004). However, we do not find the abuse of discretion standard applicable here. When reviewing a motion to reconsider that was based only on the trial court's application (or purported misapplication) of existing law, as opposed to a motion to reconsider that is based on new facts or legal theories not presented in the prior proceedings, our standard of review is *de novo*. *Muhammad v. Muhammad-Rahmah*, 363 Ill. App. 3d 407, 415, 844 N.E.2d 49, 56 (2006). "Where a party's motion for reconsideration merely asks the trial court to re-examine its earlier application of existing law," this court's review is *de novo*. *Swiatek v. Azran*, 359 Ill. App. 3d 500, 503, 834 N.E.2d 602, 604 (2005). Therefore, we review Judge Haddad's grant of the motion to reconsider on that basis.

## B. Illinois Drug Forfeiture Law

The Illinois General Assembly passed the Forfeiture Act to establish uniform procedures for the seizure and forfeiture of drug-related assets. *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 326, 685 N.E.2d 1370, 1376 (1997) (hereinafter *$1,124,905 U.S. Currency*). Civil forfeiture has a "significant beneficial effect in deterring the rising incidence of the abuse and trafficking" of substances prohibited by the Illinois Controlled

Substances Act (720 ILCS 570/100 *et seq*. (West 2000)) and the Cannabis Control Act (720 ILCS 550/1 *et seq*. (West 2000)). 725 ILCS 150/2 (West 2000); see *People v. Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 496, 841 N.E.2d 928, 937 (2005) (hereinafter *1945 North 31st Street*).

Although forfeitures of real and personal property are disfavored in the law, and the statutes authorizing them must be strictly construed in favor of the individual whose property is seized, our General Assembly has stated the provisions of the Forfeiture Act are to be liberally construed. 725 ILCS 150/13 (West 2000). Because the Forfeiture Act is based on the federal civil forfeiture statute, the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. §881 *et seq*. (2000)), the Illinois act is construed in light of the federal statute as interpreted by the federal courts, except to the extent that the provisions expressly conflict. *1945 North 31st Street*, 217 Ill. 2d at 497, 841 N.E.2d at 937-38.

As a preliminary matter, we note that in reversing the denial of the claimants' motion to dismiss the amended complaint, Judge Haddad found the State's complaint insufficient because it merely alleged suspicions of law enforcement that resembled a "drug carrier profile." The judge stated that a forfeiture complaint must identify the "misconduct giving rise to the forfeiture," citing section 6 of the Forfeiture Act (725 ILCS 150/6 (West 2000)). However, we agree with the State that section 6 is inapplicable because it applies to nonjudicial forfeiture cases involving the seizure of property valued at less than $20,000.

Instead, section 9 of the Forfeiture Act (725 ILCS 150/9 (West 2000)) governs this action. The State carries the initial burden of demonstrating probable cause for the forfeiture of the real

property or money recovered from illegal drug activities. 725 ILCS 150/9(G) (West 2000). To file a complaint to begin judicial forfeiture proceedings, section 9 simply requires that "after a review of the facts surrounding the seizure," the State's Attorney in the relevant jurisdiction be "of the opinion that the seized property is subject to forfeiture." 725 ILCS 150/9(A) (West 2000).

The complaint must allege facts that provide reasonable grounds for the belief that a nexus exists between the currency or property and illegal drug activity. *1945 North 31st Street*, 217 Ill. 2d at 505, 841 N.E.2d at 942. For example, in *$1,124,905 U.S. Currency*, the Illinois Supreme Court held that a complaint failed to state a cause of action for forfeiture in alleging that police discovered the cash in the search of a van and that the currency "was furnished or intended to be furnished in exchange for a substance, or the proceeds thereof, in violation of the Controlled Substances Act." *$1,124,905 U.S. Currency*, 177 Ill. 2d at 339, 685 N.E.2d at 1382. The supreme court concluded that the complaint did not provide adequate facts that connected the currency found in the van to narcotics. *$1,124,905 U.S. Currency*, 177 Ill. 2d at 341, 685 N.E.2d at 1382. The supreme court noted that the State's "naked allegation that the seized currency is drug[-]related does not reasonably apprise an owner of the nature of the evidence that will be presented." *$1,124,905 U.S. Currency*, 177 Ill. 2d at 340, 685 N.E.2d at 1382. While stating that the prosecution "need not plead its evidence," the supreme court held that the State was required to "allege some facts providing reasonable grounds for the belief that there exists a nexus between the currency and some illegal drug activity, supported by less than *prima facie* proof but more than mere suspicion." *$1,124,905 U.S. Currency*, 177 Ill. 2d at 341, 685 N.E.2d

11

1-04-3633

at 1382.

When a complaint has passed the pleading stage, the State, in its case in chief, must establish whether probable cause exists for the forfeiture of property such as a house or vehicle that is believed to be purchased with drug proceeds, an analysis that depends on the totality of the circumstances. *1945 North 31st Street*, 217 Ill. 2d at 505, 841 N.E.2d at 942. Although the State is not required to tie the property seized to a specific drug transaction, a suspicion of general criminal activity is not enough; "the government must have probable cause to believe that the property is connected specifically to drug activities." *$1,124,905 U.S. Currency*, 177 Ill. 2d at 336, 685 N.E.2d at 1380, citing *United States v. U.S. Currency, $30,060*, 39 F.3d 1039, 1041 (9th Cir. 1994). Accordingly, the discovery of a large sum of cash alone is insufficient to establish probable cause. *$1,124,905 U.S. Currency*, 177 Ill. 2d at 340-41, 685 N.E.2d at 1382, citing *United States v. $121,100 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993); see also *United States v. $506,231 in U.S. Currency*, 125 F.3d 442, 452 (7th Cir. 1997).

In a Seventh Circuit case involving the seizure of currency from an individual's person or baggage, the factors weighed in the "totality of the circumstances" analysis included: (1) the positive alert of a drug-sniffing dog; (2) the individual's inconsistent or false explanations about the source of the funds recovered and the reasons for travel; (3) the originating and destination cities of travel; (4) inconsistencies in the individual's responses when asked about his or her travel; and (5) the payment of cash for travel and the timing of the purchase of tickets. *United States v. Funds in the Amount of Thirty Thousand Six Hundred & Seventy Dollars*, 403 F.3d 448,

12

1-04-3633

467-68 (7th Cir. 2005) (hereinafter $30,670).[2]  The Seventh Circuit Court of Appeals held that the government was entitled to summary judgment because it showed by a preponderance of the evidence that the cash recovered was subject to forfeiture.  *$30,670*, 403 F.3d at 470.

### C.  The Sufficiency of the State's Amended Complaint

When the trial court dismissed the State's amended complaint, this proceeding was at the pleading stage, at which the State was required to demonstrate a nexus between the currency recovered from Kolody and illegal drug activity.  See *1945 North 31st Street*, 217 Ill. 2d at 505, 841 N.E.2d at 942.  Considering this matter *de novo*, the amended complaint established such a nexus by setting forth facts to provide a reasonable ground for the belief that the money was related to illegal drug activity.  As Judge Murray correctly noted in denying the claimants' motion to dismiss the amended complaint, the State was not required to establish that probable cause for the forfeiture existed at the time the complaint was filed.  See *People v. 1515 Coolidge Avenue, Aurora, Illinois*, 308 Ill. App. 3d  805, 810, 721 N.E.2d 205, 210 (1999) (noting that this burden differs from the federal forfeiture statute, under which the government must show that probable cause existed when forfeiture action was instituted).  Rather, the State is required to prove probable cause for forfeiture of the money or property at the *in rem* proceeding on its complaint.  *1515 Coolidge Avenue*, 308 Ill. App. 3d at 810, 721 N.E.2d at 210.

We find inaccurate the claimants' argument that the more recent Illinois Supreme Court case of *People ex rel. Devine v. $30,700 United States Currency*, 199 Ill. 2d 142, 766 N.E.2d

---

[2] The first two factors were deemed the "most important."  *$30,670*, 403 F.3d at 467.

1084 (2002), supersedes the appellate court's earlier holding in *1515 Coolidge Avenue*. In

*$30,700 United States Currency*, the supreme court did not address the issue of when probable

cause for the forfeiture must be shown or in any way weaken the probable cause discussion of

*1515 Coolidge Avenue*. Instead, the supreme court decided that the Forfeiture Act's notice

provisions satisfied the requirements of procedural due process. *$30,700 United States*

*Currency*, 199 Ill. 2d at 162, 766 N.E.2d at 1096. Moreover, in the preceding appellate court

opinion, the probable cause issue was discussed in clear *dicta*. *$30,700 United States Currency*,

316 Ill. App. 3d at 471, 736 N.E.2d at 143. In contrast, in *1515 Coolidge Avenue*, the probable

cause issue was squarely before the court.

Here, the amended complaint includes many of the factors, as we have outlined above,

that are to be weighed in the analysis of establishing probable cause for forfeiture of the currency.

The State alleges that Kolody was traveling to Seattle from Chicago on a one-way ticket for

which he paid cash within 24 hours of departure. When asked of his travel plans, Kolody offered

differing accounts of his method of travel to Chicago. Kolody's bags contained $280,020 in cash

in small denominations bundled in cellophane, which is admittedly a large amount of money for

a self-employed construction worker to carry on public transportation.

"[T]he government need only allege facts that tend to show the existence of probable

cause, and probable cause itself only requires a probability, not necessarily a likelihood, that the

accusations are true" that the currency or property is related to illegal drug activity. *United States*

*v. Funds in the Amount of $29,266*, 96 F. Supp. 2d 806, 812 (N.D. Ill. 2000). Although this court

expresses no opinion as to the ultimate success of the amended complaint, which is dependent on

14

the proof presented by the State on remand, our point simply is to state the complaint's clear ability to survive dismissal at the pleadings stage. Because the facts included in the State's amended complaint established a nexus between the currency recovered from Kolody's baggage and illegal activity, the complaint was sufficient to move beyond the pleading stage, and the trial judge erred in granting the motion to reconsider.

Moreover, Judge Murray's denial of the claimants' motion to dismiss the amended complaint was an interlocutory order (see *Chapman v. United Insurance Co. of America*, 234 Ill. App. 3d 968, 970, 602 N.E.2d 45, 46 (1992)), and prior interlocutory orders "should be modified or vacated by a successor judge only after careful consideration" (*Balciunas v. Duff*, 94 Ill. 2d 176, 187, 446 N.E.2d 242, 247 (1983)). While Judge Haddad's ruling was made neither carelessly nor without evident deliberation, he nevertheless applied an incorrect test to dismiss the amended complaint.

The claimants focus on Judge Murray's actions and contend that he misapplied the law. For example, they contend that federal courts have held that a "dog sniff," or the positive response of a canine trained in identifying narcotics, is of minimal, if any, probative value in establishing probable cause. See *$506,231 in U.S. Currency*, 125 F.3d at 453; *Funds in the Amount of $29,266*, 96 F. Supp. 2d at 812. We do not find that the judge improperly considered any particular factor. In his analysis, Judge Murray cited the federal precedent on dog sniffs and indicated, *inter alia*, that "[t]he weight to be given to a dog sniff in consideration of all the other factors is up to the trier of fact." Cognizant of the procedural posture of the case, the judge recognized that in considering a challenge to the complaint's sufficiency, his task was not to

15

balance each circumstance and decide the case's merits but, rather, to determine whether adequate facts were alleged to state a cause of action. See *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 9, 689 N.E.2d 205, 211 (1997).

More broadly, the claimants assert that Judge Murray applied the wrong legal standard when he assessed the amended complaint by considering the totality of the circumstances. The totality of the circumstances is weighed when determining whether the State has established probable cause, *i.e.*, has met its burden of showing a reasonable ground for the belief that a nexus exists between the property seized and illegal drug activity. *1945 North 31st Street*, 217 Ill. 2d at 505, 841 N.E.2d at 942. Judge Murray expressly stated that the probable cause determination was to be made at trial. The amended complaint set out facts as to each circumstance such that it survives a motion to dismiss under section 2-615.

### III.  The Claimants' Remaining Contentions on Appeal

The claimants further contend that Judge Karkula's order that the State failed to allege a nexus between the property seized and illegal activity in its initial complaint established the "law of the case." This assertion is illogical in light of the State's ability to amend its complaint. A decision on the insufficiency of the initial complaint could not extend to the merits of a subsequent amended pleading.

The claimants also argue that Judge Murray erred in allowing allegations to be included in the amended complaint that Judge Karkula had ordered stricken from the first complaint. The complained-of portion of the amended complaint was a summary of the factors in this case that

established a nexus between the currency and illegal activity. We view that paragraph of the complaint as mere surplusage and not as a repleading of the language that was ordered stricken from the State's original complaint.

As another claim of error, the claimants renew their contention, previously raised in their motion to dismiss the amended complaint, that the complaint was not properly verified.[3] They contend that verification by the assistant State's Attorney was inadequate because the State offered no proof that the prosecutor had personal knowledge of information in the complaint that was attributed to law enforcement officers. While the claimants do not go so far as to argue that the amended complaint must have been verified by a law enforcement official as opposed to an attorney, we note that an attorney having personal knowledge of the facts set out in a pleading may properly verify that document. *Moy v. Ng*, 341 Ill. App. 3d 984, 988-89, 793 N.E.2d 919, 924 (2003). The certification in the amended complaint, reflecting standard language, indicated that the assistant State's Attorney claimed to have knowledge of the facts and understood them to be true and correct. In addition, as Judge Murray stated in considering the claimants' argument, the assistant State's Attorney's verification of the complaint was proper even if it was based on hearsay or other information. See 725 ILCS 150/9(B) (West 2000).

Lastly, because we are remanding for further proceedings on the amended complaint, we briefly address the State's ability to challenge the standing of attorney Komie, an issue that the claimants contend has been waived by the State's failure to include it in their brief to this court.

---

[3] Section 9(A) of the Forfeiture Act requires that "the State's Attorney *** institute forfeiture proceedings by filing a *verified* complaint. " (Emphasis added.) 725 ILCS 150/9(A) (West 2000).

We agree with the State that the claimants' assertion on this issue is premature because a party's standing generally is not addressed in forfeiture cases until an answer to the complaint has been filed. "[W]here a claimant files an answer contesting forfeiture of property under the Act, it is the State's burden to challenge the claimant's standing to contest the forfeiture." *$1,124,905 U.S. Currency*, 177 Ill. 2d at 331, 685 N.E.2d at 1378. Therefore, the State has not waived its ability to challenge Mr. Komie's standing as a claimant.

CONCLUSION

For all of the foregoing reasons, we reverse and remand for further proceedings on the State's amended complaint in accordance with section 9 of the Forfeiture Act.

Reversed and remanded.

O'BRIEN, P.J., and TULLY, J., concur.